```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SHAWN WRIGHT,<br><br>           Petitioner,<br>    v.<br><br>UNITED STATES of AMERICA,<br><br>           Respondent. | HON. JEROME B. SIMANDLE<br><br>Civil No. 07-3079 (JBS)<br><br>**OPINION** |

Appearances:

Shawn Wright, #40987-050
FCI-Fairton
P.O. Box 420
Fairton, NJ 08320
    Petitioner Pro Se

Christopher Christie
United States Attorney
By:  Norman Gross
     Assistant U.S. Attorney
401 Market Street, 4th Floor
Camden, NJ 08101
    Attorney for Respondent

**SIMANDLE**, District Judge:

**I. INTRODUCTION**

Petitioner Shawn Wright was sentenced by the undersigned on January 13, 2006 to a term of 72 months' imprisonment following the execution of a written plea agreement, under which Petitioner pled guilty to a one-count Information, which charged that from as early as November 2003 through April 2004, in Salem County, in the District of New Jersey, and elsewhere, the defendant knowingly and intentionally distributed and possessed with the

intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (Plea Agrmt. at 1, Govt. Ex. B.)  The term imposed reflects a downward departure of 190 months below the time the Federal Sentencing Guidelines would have otherwise recommended, due to substantial assistance to the Government pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). (Govt. Br. at 6.)

Petitioner now brings this application for post-conviction relief pursuant to 28 U.S.C. § 2255, alleging in his submissions to this Court [Docket Items No. 1, 6] that his sentence should be vacated, set aside, or corrected.  (Pet'r's Pet. to Vacate at 1.) Petitioner argues that (1) various co-conspirators who provided cocaine to him received preferential treatment and favoritism when they were prosecuted in state, rather than federal court, and as a result, received lower sentences than Petitioner, and (2) that Petitioner's pre-sentencing investigation report should have been amended to include the results of the co-conspirators' sentencing because this Court may then have granted a greater downward departure.  (Id. at 3-5.)  The application will be dismissed because Petitioner's claims are procedurally barred both by the statute of limitations and his failure to raise these issues on direct appeal.

**II. BACKGROUND**

Petitioner Shawn Wright was arrested for drug-trafficking after controlled sales of cocaine to a confidential informant in the spring of 2004.  (Presentence Rpt. at ¶¶ 7-10.)

On December 21, 2004, Petitioner pled guilty before this Court to a one-count Information, charging that he knowingly and intentionally distributed and possessed, with the intention to distribute, more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (Plea Hr'g. at 6:5, Govt. Ex. C.)  The cooperating plea agreement included stipulations that Petitioner's role in the offense involved the distribution of at least five kilograms of cocaine, resulting in a Base Offense Level of 32 pursuant to U.S.S.G. § 2D1.1.(a)(3).  (Plea Agrmt. at 1.)  The parties provided for a three-level downward adjustment for acceptance of responsibility.  (Id. at 2.)  Petitioner stipulated that he waived his right to appeal or collaterally attack his sentence if the total offense level was equal to or less than 29.  (Id. at 6.)  The agreement also set forth that Petitioner would cooperate with the Government by testifying in grand jury and trial proceedings and investigations.  (Id. at 2.)  In return, the Government pledged to file a motion for a sentence reduction pursuant to § 5K1.1 of the Federal Sentencing Guidelines and 18 U.S.C. § 3553(e).  (Id.)  The report emphasized, however, that the Petitioner's sentence

fell to the sole discretion of the Court, and that the agreement made no promise of a particular Sentencing Guidelines range. (Id.)

Thereafter, a Presentence Investigation Report was prepared by the United States Probation Department.  That report recommended an Offense Level of 37 (Presentence Rpt. at ¶ 26) and a criminal history category of VI, given its determination that Petitioner was a career offender, pursuant to U.S.S.G. § 4B1.1, based on his prior convictions for robbery and drug dealing (Presentence Rpt. at ¶ 53).[1]  The resulting Sentencing Guidelines Range was 360 months to life imprisonment. (Presentence Rpt. at ¶ 80.)

At Petitioner's January 13, 2006 sentencing hearing, the Court found Petitioner's acceptance of responsibility manifest and awarded a three-level adjustment pursuant to U.S.S.G. § 3E1.1, reducing the total offense level to 34, and the Federal Guidelines range to 262 to 327 months.  (Sentencing Hr'g., January 13, 2006, at 2:25 to 3:2, Govt. Ex. D.)  The Government filed a motion for a downward departure pursuant to U.S.S.G. §

---

[1] At the time the final pre-sentence report was written Petitioner had not submitted his written acknowledgment of responsibility for the charged crimes. The Probation Office, therefore, did not recommend that Petitioner receive a downward adjustment for acceptance of responsibility. (Govt. Br at 4 n.1.)  Petitioner demonstrated his acceptance of responsibility at the sentencing hearing, and his sentence reflected this determination.

4

5K1.1 and 18 U.S.C. § 3553(e) due to Petitioner's substantial assistance in the investigation. (Govt. Br. at 4.)  The Court granted that motion and sentenced Petitioner to 72 months' imprisonment.  (J. Order January 13, 2006 at 2, Govt. Ex. F.) The Court gave consideration at some length to all sentencing factors under § 3553(a) and the extent of departure for substantial assistance in the prosecution of others under U.S.S.G. § 5K1.1 and § 3553(e), including the relatively light sentences imposed upon persons in New Jersey and New York against whom Petitioner cooperated, and determined that a departure was warranted from the advisory range of 262 to 327 months; the 72-month sentence was a very substantial departure of 190 months below the bottom of that range.  The Court advised Petitioner of his right to appeal (Govt. Ex. D. at 38-39.)

    Petitioner never filed a direct appeal of his conviction or sentence, despite the fact that the conditional waiver of appeal in the plea agreement did not apply because the Court found an offense level of higher than 29.  Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 on July 9, 2007.  (Pet'r's Pet. at 1.)  The Government did not answer the petition but filed a motion to dismiss on August 28, 2007. [Docket Item No. 5].  Petitioner filed a motion to strike the motion on September 17, 2007. [Docket Item No. 6], which the Court denied [Docket Item 8]. For the reasons explained below,

5

the Court shall grant the motion to dismiss this petition.

## III. DISCUSSION

### A. Petitioner's Claims Are Procedurally Barred

Petitioner's claims must be dismissed because the one-year statute of limitations for filing habeas petitions has expired and because he failed to preserve his substantive claims for collateral attack by raising them on appeal.

#### 1. The One-Year Limitations Period Has Passed

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") places strict limitations on habeas petitions, providing a prisoner with just one year to file a request for relief under 28 U.S.C. § 2255. Section 2255 provides that the one-year limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.  Petitioner has not alleged there was any unconstitutional Government action impeding him from filing his application, and asserts no new rule of constitutional law retroactively applicable to his case.

Instead, Petitioner asserts that his case is timely because new facts that support his claims were discovered after his sentencing that warrant a later accrual of the statute of limitations.  (See Pet'r's Opp'n to Dismiss.)  Habeas petitioners are entitled to a later accrual of the statute of limitations under § 2255 from the date on which facts supporting their claims are discovered through an exercise of due diligence "'only if vital facts could not have been known'." Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004) (quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)).[2]

Here, Petitioner alleges that new facts regarding the probationary sentences that two of his co-conspirators received were discovered by him after his sentencing and that such discovery entitles him to a later accrual date of the statute of limitations.  (Pet'r's Opp'n.)  However, he fails to name these co-conspirators or identify when said facts were discovered.  (Id.)  Moreover, Petitioner asserts that the sentence of only one

---

[2] "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." Schlueter, 384 F.3d at 74 (citing Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004)).

of his co-conspirators was discussed at sentencing.  (Id.)

However, this Court's review of the sentencing hearing transcript indicates many of Petitioner's co-conspirators' state sentences were discussed at some length at sentencing, including two who had received sentences of probation in state court. (Sentencing Hr'g. at 9:4 to 9:10, 11:12 to 12:20.)  At sentencing, the Government indicated that all ten New Jersey subjects against whom Petitioner cooperated were his subordinates in the drug trade - they were "all individuals who worked underneath Mr. Wright.  They were either associated with him or they were lower level drug dealers who Mr. Wright supplied himself."  (Id. at 8:2 to 8:4.)  The local prosecutor's office already "had a strong case against these people to begin with, but Mr. Wright cooperation strengthened what was already a strong case and he certainly should get credit for it," according AUSA Fitzpatrick.  (Id. at 8:6 to 8:8.)  Specifically, it was known at sentencing, and the Court took into account, that the ten local defendants had been sentenced to "relatively moderate sentences . . . [T]he vast majority of them received probationary sentences. There were some, the lower level drug dealers, [who] served periods of incarceration.  But I would venture to say they were all relatively short periods of incarceration."  (Id. at 9:4 to 9:10.)  The Court took into account the information about all ten local defendants and the three New York defendants in determining

an ample downward departure.  (Id. at 12:21 to 13:14.)  Defense counsel, Michael Pinsky, Esq., argued the need for proportionality of Wright's sentence to those against whom he cooperated (Id. at 18:25 to 21:20.)  Therefore, this Court is unpersuaded that the facts are actually new, and that Petitioner could not, through an exercise of due diligence, have discovered these facts before his sentence became final.  The sentence of those other individuals were known and discussed at sentencing on January 13, 2006.

Furthermore, even if the alleged sentences were newly discovered vital facts, because Petitioner has not indicated when they were discovered, there would be no means for this Court to accrue the statute to a later date.  (Pet'r's Opp'n.)  Therefore, Petitioner is not entitled to a later accrual date for the statute of limitations.  Thus, the one-year statute of limitations began to run on the date when Petitioner's judgment of conviction became final.

When a defendant does not "pursue a timely direct appeal to the court of appeals, his or her conviction and sentence becomes final, and the statute of limitations begins to run, on the date on which the time for filing such an appeal expired."  Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999).  According to Fed. R. App. P. 4(b)(1)(A)(i), a defendant convicted in the District of New Jersey has ten days from the entry of the

judgment within which to file a direct appeal to the Third Circuit.

Because Petitioner never filed a direct appeal, his conviction became final on January 27, 2006, ten business days after the entry of judgment on January 13, 2006.  (J. Order January 13, 2006 at 1.)  Petitioner did not file this § 2255 motion until July 3, 2007, more than one year after his conviction and sentence became final.  (Pet'r's Pet. at 1.) Therefore, Petitioner's § 2255 motion is barred.

### 2. Petitioner Failed to Appeal his Claims

When a prisoner raises in his petition for a writ of habeas corpus any issue that he failed to raise on direct appeal, that issue is typically subject to procedural default.  United States v. Frady, 456 U.S. 152, 167-68 (1982).  The failure to appeal is fatal except when the prisoner can show actual innocence, or (1) cause excusing the procedural default and (2) actual prejudice resulting from the error.  Id. at 168.  In the interest of finality, habeas petitions should almost never be a means of overturning final convictions where the defendant waived or failed to appeal his or her claim.  DeJesus v. United States, No. 05-939, 2005 U.S. Dist. LEXIS 34220, at *17 (D.N.J. 2005) (citing Frady, 456 U.S. at 164).

Petitioner argues that various other criminals who provided cocaine to him received preferential treatment and favoritism

10

when they were prosecuted in state, rather than federal court, and as a result received lower sentences than Petitioner. (Pet'r's Pet. at 3.)  He further argues that his Presentence Investigation Report should have been amended to include the durations of these other co-conspirators' sentences for consideration in his own sentencing. (Pet'r's Pet. at 3.)  He had a right to raise these issues on direct appeal, but did not do so.  Instead, he brings these claims now, but fails to offer evidence satisfying the Frady standard.  See Frady, 456 U.S. at 167-68.

Petitioner does not assert actual innocence, as he stipulated that he committed the offenses he was charged with at his plea hearing on December 21, 2004, and has not changed that position.  (Plea Hr'g. at 6.)  He also offers no cause excusing the double procedural default.

Petitioner similarly fails to offer any evidence of actual prejudice, the other element required by the Frady standard for waiving procedural default.  See Frady, 456 U.S. at 170 (prejudice is an alleged error that "worked to [the Petitioner's] actual and substantial disadvantage").  In his petition, Wright argues that the Court should assume that if this Court had the information regarding the sentences of the other co-conspirators he would have received a greater downward departure.  (Pet'r's Pet. at 5.)  However, as discussed above, the lighter sentences of several co-conspirators were raised and discussed during Petitioner's

11

sentencing hearing.  (Sentencing Hr'g. at 12, 18-20.)  Moreover, recognition of Petitioner's substantial assistance resulted in a sentence which is 190 months less than what the Federal Sentencing Guidelines would have recommended.  He received the full benefit of his plea agreement, as his sentence includes the downward departure, and the departure determination included explicit recognition of the relatively light sentences of those against whom he cooperated.  Petitioner cannot prove actual prejudice for the purposes of excusing his procedural default, and his failure to pursue a direct appeal is therefore fatal to his claims.

### 3. Petitioner's Substantive Claims Fail On The Merits

Were Petitioner's claims to survive procedural default, his claims would nevertheless fail because they are without merit. First, Petitioner has not cited any case law to support his claim that he was prosecuted and sentenced unfairly because his co-conspirators received undue preferential treatment and favoritism when they were tried in state court.  Moreover, unpublished case law in the Third Circuit rejects this argument, holding that disparate sentences resulting from a prosecutor's choice of forum are not unreasonable or grounds for a lesser sentence.  See United States v. Dowdy, 216 Fed. Appx 178, 182 (3d Cir. 2007)(unpublished) ("[S]entencing disparities resulting from the exercise of prosecutorial discretion in deciding where to prosecute a particular defendant are not, in and of themselves, unreasonable.").

Moreover, the Third Circuit's opinion on this matter is derived from, and congruent with, the opinions in many other jurisdictions. See United States v. Searcy, 132 F.3d 1421, 1422 (11th Cir. 1998) ("[O]ther circuits already have ruled that a prosecutor's choice of federal rather than state jurisdiction is not a permissible circumstance to consider for departing downward").  As the Second Circuit has explained:

> Allowing departure because a defendant might have been subjected to different penalties had he been prosecuted in state court would make federal sentences dependent on the law of the state in which the sentencing court was located, resulting in federal sentencing that would vary from state to state. To adopt this rationale for departure would surely undermine Congress's stated goal of uniformity in sentencing.

United States v. Haynes, 985 F.2d 65, 70 (2d Cir. 1993).

Therefore, case law would not compel this Court to grant collateral relief or to have granted a greater downward departure merely because some of Petitioner's co-conspirators were convicted in state court.  Indeed, the Petitioner, his attorney, the prosecutor and the Court were all aware of this fact and their probationary sentences at the time of sentencing.

Moreover, Petitioner's second claim that the state sentences of his co-conspirators should have been included in the Presentence Report is similarly unpersuasive.  When Petitioner's counsel was asked by this Court at sentencing if he had any objections or additions to the report, his counsel responded negatively even though the co-conspirators' sentences were

introduced by both parties during the hearing.  (Sentencing Hr'g. at 4.)[3]

Furthermore, regardless of the exclusion of the co-conspirators' state sentences in the report, Petitioner's claim that he would have received a lesser sentence had they been included is without merit for two reasons.  First, the Court's sentencing analysis under 18 U.S.C. 3553(a)(6) "focuses on the need to avoid unwarranted disparities among sentences imposed by federal courts for violations of federal law, not disparities between state and federal defendants." Dowdy, 216 Fed. Appx at 181 (citing United States v. Branson, 463 F.3d 1110, 1112-13 (10th Cir. 2006)).  Therefore, because Petitioner has not alleged any disparity between his sentence and other federal defendants, there is no relief compelled by law.

Second, though this Court was under no duty to consider the proportionality of Petitioner's sentence with state defendants, the Court did indeed inquire about these sentences and permit discussion of them at Petitioner's sentencing hearing, including those who received probationary sentences.  (See supra note 3 and accompanying text.)  Furthermore, Petitioner was not deprived of any possible mitigating effect this information could have

---

[3] THE COURT: "Now, first, is there anything else that needs to be said about the presentence investigation and report in order to bring it up to date or make it more accurate?" MR. FITZPATRICK: "No, sir." MR. PINSKY: "Nothing, your Honor."  (Id. at 4.)

14

afforded because this Court actually considered the co-conspirators' sentences in the totality of Petitioner's sentencing.  (See Sentencing Hr'g. at 34.)[4]  Its exclusion from the Presentence Investigation Report was of no consequence, since all parties and the Court had the information about the state sentences of the others.  In addition, Petitioner fails to consider that his plea agreement stipulated sole sentencing discretion to this Court,[5] and further that he would not seek any downward departure not set forth in the agreement, which includes sentencing disparities with his state co-conspirators.[6]

Therefore, regardless of procedural default, Petitioner's claims are not meritorious.

## IV. CONCLUSION

Petitioner's § 2255 application for post-conviction relief will be dismissed because it is untimely and procedurally barred,

---

[4]  THE COURT: "I've considered the proportionality and the proportionality of the sentence in this case with those against whom Mr. Wright cooperated, those against whom cooperated were all taken through the state system and punished through the state system and their sentences in the end are not that impressive." (Id. at 34.)

[5]  Plea Agrmt. at 3.

[6] "The parties agree that there is no basis for any upward or downward departure, or any upward or downward adjustment, not set forth herein.  Accordingly, neither party will seek or argue for any departure or adjustment not set forth herein."  (Plea Agrmt. at 6.)

and the accompanying Order is entered.


**June 30, 2008**               **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                United States District Judge

16